GROSS R. SCRUGGS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

MARIAN P. SCRUGGS, PETITIONER, *v.* COMMISIONER OF INTERNAL REVENUE, RESPONDENT.

SCRUGGS INVESTMENT COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 33610, 38711, 46270.   Promulgated December 18, 1931.

*O. D. Brundidge, Esq.*, and *O. A. Fountain, Esq.*, for the petitioners.

*John D. Kiley, Esq.*, for the respondent.

OPINION.

BLACK: The issues raised in these consolidated proceedings are entirely of fact and it is unnecessary to review or comment at length on the many authorities cited by counsel. There appears to be no issue of law between petitioners and respondent.

The claims for deduction of the debts of R. P. Caruth, $5,447.55, and O. F. Rawls, $900, are involved only in the cases of Gross R. Scruggs and Marian P. Scruggs, Docket Nos. 33610 and 38711. It appears that as to both debtors suits would have availed nothing. In that sort of a situation, in *Roy Nichols*, 17 B. T. A. 580, the Board said:

With reference to the bad debt claims, it may be pointed out that in two of the cases the money loaned to the debtor was loaned in a generous effort on the part of the petitioner to help a person connected with him in business. The financial condition of such debtor was known by petitioner to be precarious at the time the loan was made and so remained at all times thereafter. Moreover, no suit was filed to collect these claims. However, the money was loaned under a promise to pay; it was not a gift. A suit would have been futile and, with an added outlay for expense. * * *

We believe that the evidence establishes the worthlessness of all those debts in the year in which the deductions were taken, and we therefore hold that for the year 1922 petitioner is entitled to deduct from gross income the following amounts * * *.

See also *Edward K. Johnstone*, 17 B. T. A. 366. We think that petitioners are entitled to the bad debt deductions claimed in their amended petitions, and respondent should allow such deductions in recomputing the deficiencies against petitioners, Gross R. Scruggs and Marian P. Scruggs.

The remaining issue to be discussed is the March 1, 1913, fair market value of the land and building known as the Insurance Building, located at Jackson and Browder Streets, Dallas, Tex., which was an office building of reenforced concrete and brick, 50 by 100 feet and having a basement and five stories.

As has already been stated in our findings of fact, we have found that the March 1, 1913, value of the land was $90,000. We believe this valuation is supported by the weight of the evidence. The evidence shows that beginning around July 1, 1912, two of the leading real estate firms in the city of Dallas began taking options on real estate in the vicinity of the Insurance Building. The purpose of

securing these options was to secure land for the terminal of the Electric Railway Company, an extensive interurban system running into Dallas. Such purpose was not known to the public at that time, but became known prior to March 1, 1913, and there was great activity in the real estate market in that vicinity and all property located thereabout greatly increased in value. It was definitely known prior to March 1, 1913, that the interurban station and office building would be erected on land situated near the Insurance Building, and that Browder Street, adjoining the Insurance Building, would be opened through. All this added greatly to the value of the real estate in question and we think the valuation of $90,000 for the land as of March 1, 1913, as claimed by petitioners, is supported by the weight of the evidence.

Relative to the fair market value of the building, there is a wide difference of opinion between the expert witnesses who testified, ranging from $120,000, as fixed by the expert witness who testified for respondent, to $185,000, as testified by the expert witnesses for petitioners. After carefully weighing all the evidence, we have found the March 1, 1913, value of the building to be $120,000.

On July 6, 1912, petitioners, Gross R. Scruggs and wife, Marian P. Scruggs, gave Murphy and Bolanz an option to sell the land and building for $185,000. On October 13, 1913, the petitioners executed a lease on said premises to Shuttle Bros. & Lewis, for a period of 25 years, at a gross rental of $1,200 per month or $14,400 per annum. The lease provided that the lessors, the said petitioners, were to bear the ordinary operating expenses of the building, such as taxes, insurance, etc. The lease contained a clause which reads:

Clause (5) : In case of total destruction of the building on the leased premises by fire, or tornado, during the first twenty years of this lease, lessor shall forthwith rebuild at their own expense, constructing five or more stories and basement under this lease; but if a building is constructed costing more than the present building, lessees rent for the basement and first five floors shall be increased, but in proportion only to the difference between *the cost of constructing the present building ($100,000.00) plus the present value of the land ($75,000.00)* and the then cost of constructing a building of the same size as the present building of the material or construction actually used, plus the present value of the land.

Petitioners introduced several expert witnesses, who testified that the building had approximately 375,000 cubic feet of office space on March 1, 1913, and that the cost of similar construction as of that date was approximately 50 cents per cubic foot, and that, based on these figures, the value of the building on March 1, 1913, was $185,000. These witnesses also testified that the cost of construction of first-class office buildings in Dallas, Tex., at the time of the hearing in this proceeding, to wit, November 1, 1930, was between 50 and 60 cents per cubic foot, and was about the same as it was in 1913.

Respondent introduced evidence to show that in 1913 the cost of construction of office buildings such as the one in question was considerably less than it was at the time of the hearing, November 30, 1930, and that the value of the Insurance Building could not have been as high as that fixed by petitioners' witnesses. Respondent's evidence of value of the building appears to more nearly accord with the contemporaneous facts which took place around March 1, 1913, such as the execution by petitioners, on July 1, 1912, of an option to Murphy and Bolanz to sell the land and buildings for $185,000, and the statement in the lease to Shuttles Bros. & Lewis, dated October 13, 1913, that the cost of constructing the building was $100,000. Moreover, the gross rental agreed upon in the lease to Shuttle Bros. & Lewis, was $14,400, and this supports the view that the building did not have a greater value than $120,000 on March 1, 1913, and the land a value of $90,000. This $14,400 agreed upon in the lease to Shuttle Bros. & Lewis would be a gross return of approximately 7 per cent on the total amount of the investment, if fixed at the figure of $210,000, whereas all of petitioners' expert witnesses testified that an office building of the kind in question would have to yield a gross return of between 8 and 10 per cent on the investment, in order to yield a fair net return on the owner's capital investment.

The evidence shows that during the year 1913, the year prior to the lease to Shuttle Bros. & Lewis, the gross rentals from the Insurance Building were $18,700. This would be a gross return of slightly less than 9 per cent on the total amount of $210,000, the value of the land and building as of March 1, 1913, which we have fixed from the evidence. So, taking all the evidence into consideration, and giving weight to all elements of value, such as type of building, cost of reproduction, gross return on investment, suitability to the neighborhood in which it is located, and other factors, we think the valuation we have fixed, $90,000 for the land and $120,000 for the building, is just and reasonable. Cf. *Tracy* v. *Commissioner*, 53 Fed. (2d) 575, affirming *Thomas H. Tracy*, 15 B. T. A. 1107.

The respondent fixed the cost of the addition made in 1915 at $50,000, which petitioners urge should be $51,365.56. Petitioners did not present any itemized or satisfactory account showing those costs. We do not think petitioners have sustained the burden of proof and shown error on respondent's part as to this item and his determination of $50,000 for the addition in 1915 is approved.

The cost of the addition made in 1920 was $98,720.01, as agreed by stipulation.

Depreciation on the building will be allowed to petitioners on the foregoing figures at 2 per cent per annum for each of the taxable

years involved, and the profit of the Scruggs Investment Company resulting from the sale to the Great States Insurance Company in 1927 will be calculated according to the March 1, 1913, value, plus the cost of the two additions, all property depreciated to the date of sale.

*Decision will be entered under Rule 50.*